Clayton PETERSON, Plaintiff-Appellee,

v.

Raymond HAGER, d/b/a Hager's Flying Service, Defendant-Appellant.

No. 82–1391.

United States Court of Appeals, Tenth Circuit.

Aug. 19, 1983.

Rehearing Granted Nov. 22, 1983.

Larry R. Monard of Berry & Berry, Oklahoma City, Okl., for plaintiff-appellee.

John McKee of Berry & McKee, Oklahoma City, Okl., and Phil Scott, Waurika, Okl., for defendant-appellant.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Raymond Hager appeals from a jury verdict and judgment in favor of Clayton Peterson which found that Hager had negligently sprayed herbicide on Peterson's pecan trees, causing $8,000 in damage.

Peterson owns 140 acres of pasture land near Ryan, Oklahoma. Within the pasture land is a grove of about 400 pecan trees which covers approximately ten acres. In the spring of 1979 Peterson hired Hager, an experienced crop sprayer, to spray an herbicide on the property in question. Hager advised Peterson that some of the herbicide would drift on to the pecan trees and burn them. Peterson, however, testified that Hager assured him that there would be no permanent damage to the trees. On April 24, 1979, Hager sprayed the property. Peterson's evidence indicated that the wind that day was too high, so the herbicide drifted farther than was appropriate. As a result, according to his evidence, Peterson's pecan trees were severely burned and produced no pecans in 1979, 1980, or 1981. Since he had only recently acquired the property, Peterson had not previously harvested pecans from the injured trees. He had, however, been preparing to utilize the pecan trees as producers, and he intended to harvest pecans in the years in question.

Peterson commenced this suit in 1981, alleging that Hager's negligence had caused $75,000 in damages. No pretrial order was filed, but both parties filed contentions. Peterson contended in the alternative that the entire 140 acre tract had been permanently damaged in the amount of $28,000, or that he had suffered temporary damages of $15,000 as a result of lost crops.

At trial, Peterson presented evidence that the herbicide had caused the damage. While one witness testified that the pecan trees increased the value of the land, Peterson offered no evidence showing the amount by which the value of the land had decreased. Peterson's witnesses also testified concerning the number of trees damaged, the amount of pecans those trees would have produced, and the price the pecans would have commanded in the three years in question. Peterson did not, however, present any evidence of the costs involved in harvesting and selling the pecans. At the close of Peterson's evidence, Hager demurred to the evidence and moved to dismiss on the grounds that Peterson had failed to present sufficient evidence of causation and the amount of damage. The trial court denied the motion and Hager presented his evidence, including a witness who testified concerning the profit a pecan grower would receive after the costs of harvesting and marketing the pecans were deducted from the market price. At the close of the evidence, Hager made a motion for a directed verdict which the trial court denied. The jury was instructed only on the measure of damages for injuries to growing crops, and not on permanent damage to the value of the land. The amount of damages prayed for was represented to be $75,000. The jury returned a verdict in the amount of $8,000 in favor of Peterson.

On appeal, Hager contends that the court erred in: (1) failing to grant the motion to dismiss; (2) refusing to grant a directed verdict; (3) instructing the jury on the measure and amount of damages; and (4) improperly interjecting itself into the proceedings. We conclude that the first issue is dispositive of this case.

In a jury trial, the proper motion to be made at the close of the plaintiff's evidence is a motion for a directed verdict under Fed.R.Civ.P. 50(a). When a "motion to dismiss" is made in a jury trial, the motion should be treated as one for a directed verdict under rule 50(a). *Johnson v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 400 F.2d 968, 970 n. 1 (9th Cir.1968); *Woods v. National Life and Accident Insurance Co.,* 347 F.2d 760, 769 (3d

Cir.1965). We will analyze Hager's motion accordingly.

In a diversity case, this court applies the federal standard in determining whether the evidence is sufficient to go to the jury or, as a matter of law, the court should direct a verdict. *Hidalgo Properties, Inc. v. Wachovia Mortgage Co.,* 617 F.2d 196, 198 (10th Cir.1980). Under the federal standard, the trial court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the party against whom the motion is directed. *Id.* When the evidence is so viewed, a directed verdict is proper only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the opposing party would be improper and would have to be set aside by the trial judge. *Id.; Smith Machinery Co. v. Jenkins,* 654 F.2d 693, 697 (10th Cir.1981); *Toland v. Technicolor, Inc.,* 467 F.2d 1045, 1046 (10th Cir.1972).

While the sufficiency of the evidence is tested against the federal standard, the underlying cause of action in a diversity case is governed by state law. In Oklahoma, the law governing the recovery of damages for injuries to growing crops is well settled. Whether the action is brought under a theory of negligence, nuisance, or breach of warranty, the plaintiff must present evidence of the value of the crops at the time they were destroyed: "The rule in this state . . . is that the damages for the destruction of growing crops are to be determined by the market value of such crops when matured and ready for market, less the cost of finishing the cultivation, and gathering, preparing, and transportation to market." *Garrett v. Haworth,* 183 Okl. 569, 83 P.2d 822, 827 (1938). *See also Cities Service Gas Co. v. Christian,* 340 P.2d 929, 936–37 (Okl.1959) (quoting *Garrett*); *Bowles v. Brown,* 187 Okl. 264, 102 P.2d 837, 840 (1940) (quoting *Garrett*); *Haenchen v. Sand Products Co.,* 626 P.2d 332, 335 (Okl. App.1981). The Oklahoma Supreme Court has repeatedly ruled that evidence of the market value of the crop alone is insufficient to support an award for damages; the plaintiff must also produce evidence of the cost of harvesting and marketing the crop so that the jury can compute the actual amount of damage suffered. *Garrett, supra,* 83 P.2d at 828; *Bowles, supra,* 102 P.2d at 840; *Gripe v. Hatmaker,* 189 Okl. 317, 116 P.2d 973, 974 (1941); *Crow v. Davidson,* 186 Okl. 84, 96 P.2d 70, 71 (1939). In two cases where the plaintiff failed to provide evidence of the cost of harvesting the crop and transporting it to market, the Oklahoma Supreme Court specifically held that a directed verdict should have been granted. *Hamburger v. Davis,* 207 Okl. 351, 249 P.2d 723, 725 (1952); *City of Okmulgee v. Wall,* 193 Okl. 333, 144 P.2d 103, 104 (1944). *See also Haenchen, supra,* 626 P.2d at 335.

We conclude, therefore, that in this case Peterson not only had the burden of proving the fact of damage, he had the burden of providing the jury with the means of calculating those damages. *See City of Okmulgee, supra,* 144 P.2d at 104. Peterson failed to produce any evidence of the cost of harvesting and marketing the pecans. Thus, when Hager made his motion at the close of Peterson's evidence, there was insufficient evidence to support a jury verdict in Peterson's favor; the trial judge would be required to set aside such a speculative verdict. Accordingly, the trial court should have treated Hager's motion to dismiss as a motion for a directed verdict and granted a directed verdict in his favor.

We recognize that based on the evidence Hager presented the jury properly could calculate Peterson's loss. Had the trial court reserved ruling on Hager's motion until the close of the evidence, we would conclude that Hager made a tactical decision in presenting evidence of the cost of harvesting and marketing pecans, with the knowledge that the court would make its ruling based on all of the evidence in the case. *Taylor v. Gilmartin,* 686 F.2d 1346, 1354 (10th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). Here, however, the trial court denied Hager's motion when it was made, thus indicating that it considered Peterson's evidence sufficient to go to the jury. Consequently, Hager had little choice but to present evidence which would reduce the amount of damages, even though by doing so he pro-

vided an essential element of Peterson's case.

█ Thus, while we are reluctant to invade the province of the jury, under the circumstances of this case, we hold that the court should have directed a verdict in favor of Hager at the close of Peterson's evidence. Peterson failed to present evidence which Oklahoma law requires him to present in order to establish his cause of action, so a jury verdict in his favor would have been improper.[1] *See Hamburger, supra,* 249 P.2d at 725; *City of Okmulgee, supra,* 144 P.2d at 104. It is true that directed verdicts should be "cautiously and sparingly granted." *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.,* 584 F.2d 946, 951 (10th Cir.1978) (quoting *Wilkin v. Sunbeam Corp.,* 377 F.2d 344, 347 (10th Cir.1967), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 464 (1967)). When, however, a party has failed to present the minimal amount of evidence that would justify sending the case to a jury, the court must act to prevent speculation on legally unfounded claims. *Brady v. Southern Railway Co.,* 320 U.S. 476, 480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943).

WE REVERSE.

---

**1.** Peterson's contentions alternatively stated a claim based on the permanent damage to the land. No evidence was presented on that issue, however, so the jury would similarly have no basis for awarding damages to him.